

U.S. Department of Justice

United States Attorney
Eastern District of New York

MRM:OG
F. #2017R00827

610 Federal Plaza
Central Islip, New York 11722

December 13, 2022

By ECF

The Honorable Joanna Seybert
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

        Re:    United States v. Kevin Rizo
                 Criminal Docket No. 17-283 (JS)

Dear Judge Seybert:

        The government respectfully submits this letter in connection with the sentencing of defendant Kevin Rizo, which is scheduled for December 20, 2022. As set forth in the Presentence Investigation Report ("PSR"), the defendant faces a mandatory minimum sentence of 15 years and an advisory Guidelines range of 360 months to life. The United States Probation Department ("Probation") has recommended a principal sentence of 240 months' imprisonment. The government submits that a sentence of 262 months' imprisonment would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

I.    Background

        On October 28, 2016, a thirteen-year-old boy living in Nassau County, New York (hereinafter "John Doe #1") and his father reported to the Nassau County Police Department ("NCPD") that an Instagram user with the name "Alyssa" had requested a friendship with John Doe #1 on Instagram, asked to communicate via Snapchat using the account moniker Alyssa" and then asked John Doe #1 for nude photos. PSR ¶ 4. When John Doe #1 refused, "Alyssa" stated that she would kill herself if John Doe #1 refused to send photos. Id. In response, John Doe #1 sent a nude photo of himself. Id. "Alyssa" then threatened to tell "her father" or call the police if John Doe #1 did not send additional nude photos. Id. John Doe #1 thereafter sent "Alyssa" nude photos for several weeks out of fear that "Alyssa" would follow through on those threats. Id. One of the recovered photos depicted John Doe #1 sitting naked with his legs spread open exposing his penis. Id.

The investigation revealed that on October 30, 2016, a 12-year-old boy in Canada (hereinafter "John Doe #2") sent sexually explicit photos of himself to the Instagram user with an account named "Alyssa" after the defendant contacted John Doe #2 and coerced him to do so.  Id. ¶ 5.  One of the photos of John Doe #2 depicted him lying down with a shirt on and his penis exposed.  Id.

On November 29, 2016, a concerned parent filed a report with a Department of Homeland Security-Homeland Security Investigations ("DHS-HSI") tip line that her twelve-year-old son (hereinafter "John Doe #4") and a second twelve-year-old boy (hereinafter "John Doe #3") had been contacted by Instagram user "Alyssa," who demanded nude photos of the two boys.  Id. ¶ 6.  The two boys were living in Arizona at the that time.  After John Doe #3 complied with "Alyssa's" demand for nude photos by sending a picture of his genitals, "Alyssa" threatened to tell John Doe #3's family members, friends, and Instagram followers what he had done if he did not send additional photos and videos.  Id.  In response, John Doe #3 sent approximately twenty photos and ten videos exposing and touching his genitals.  Id.

On December 2, 2016, a fourteen-year-old boy residing in Nassau County, New York (hereinafter "John Doe #5") and his parents reported to the NCPD that on November 30, 2016, John Doe #5 had been contacted by "Alyssa" via Instagram.  Id. ¶ 7.  "Alyssa" demanded nude photos from John Doe #5.  Id.  When John Doe #5 refused, Alyssa sent him a message stating, "well it would be a shame if this got out of hand" and sent a screen shot of John Doe #5's sister's Instagram page and John Doe #5's mother's Facebook status.  Id.  On December 1, 2016, John Doe #5 then sent videos and photos of his penis to "Alyssa."  Id.  "Alyssa" then directed John Doe #5 to create additional videos and instructed John Doe #5 on what to do by saying, for instance, "lay down and play with it."  Id.  That day, John Doe #5's friends corresponded with "Alyssa," and told John Doe #5 that "Alyssa" had sent them nude photos of John Doe #5.  Id.

On February 1, 2017, DHS-HSI special agents interviewed a thirteen-year-old boy (hereinafter "John Doe #6") and his mother, residences of Arizona.  Id. ¶ 8.  John Doe #6 stated that in December 2016, someone contacted him asking for nude images via Instagram.  Id.  When asked, John Doe #6 stated that he believed he was contacted by "Alyssa", who repeatedly asked for nude images over a period of several days.  Id.  According to John Doe #6, "Alyssa" sent John Doe #6 a picture of an erect penis, indicating that the picture depicted John Doe #6 and that "Alyssa" threatened to send the picture to John Doe #6's friends if John Doe #6 did not send nude pictures to "Alyssa."  Id.

On February 17, 2017, DHS-HSI special agents interviewed a thirteen-year-old boy in Arizona (hereinafter "John Doe #7"), who informed that he had been contacted by "Alysa" in December 2016.  Id. ¶ 9.  John Doe #7 stated that "Alyssa" asked him for nude pictures and videos and that John Doe #7 Acquiesced, sending "Alyssa" one picture and approximately one or two videos.  Id.  The picture was recovered and depicted John Doe #7 with his penis exposed.  Id.

2

Information obtained from Snapchat and Instagram revealed that the Snapchat and Instagram accounts used by "Alyssa" originated from an internet protocol ("IP") address affiliated with the defendant's residence in Flushing, New York. Id. ¶ 10.

On or about April 26, 2017, law enforcement executed a search warrant at the defendant's residence. Id. ¶ 11. The defendant waived his Miranda rights and agreed to speak with DHS-HSI agents and consented to a search of his cellular telephone. Id. The defendant admitted that he had engaged in sexually explicit dialogue seeking to receive child pornography from multiple minor child victims in New York and Arizona, and admitted to calling himself "Alyssa" when communicating with minors. Id. The defendant also acknowledged that he sent nude images of John Doe #5 to John Doe #5's friends, knowing that John Doe #5 was 14 years of age. Id. The defendant admitted that he communicated online with 10 to 20 underage boys, and he admits he was very threatening during those communications in an effort to coerce the boys to send him nude and sexually explicit photos of themselves. Id.

The investigation revealed that the defendant communicated with at least 130 boys and that most of them sent him nude images and videos of themselves at his behest. Id. ¶ 12. After he received the images and videos from the boys, the defendant threatened to disseminate those videos and images to others, including the boys' friends and family members, if more images and videos were not sent. Id. 22 of the 130 boys were identified during the investigation, several of whom were contacted by DHS-HSI officials. Id. The minors generally described initially being flattered by contact with "Alyssa," but subsequently felt humiliated, trapped, and scared by the defendant's threats and use of blackmail to coerce them to send nude and sexually explicit images and videos of themselves. Id. The addendum to the PSR contains eleven handwritten statements from some of the child victims whom the defendant exploited, describing how the defendant's behavior made them feel "trapped," "scared," "helpless," "ashamed" and "traumatized."

On May 25, 2017, a grand jury in the Eastern District of New York returned a sixteen-count indictment charging the defendant with multiple counts of sexual exploitation of a child, coercion and enticement, receipt of child pornography and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2422(b), 2252(a)(2) and 2252(a)(4)(B), respectively. ECF Dkt. No. 8. On September 13, 2021, the defendant pled guilty before the Honorable Anne Y. Shields, U.S. Magistrate Judge, Eastern District of New York, to Count Five of the Indictment, charging sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). PSR ¶ 1. This Court accepted the plea on September 1, 2022. ECF Dkt. No. 70.

II.     Guidelines Calculation

The Guidelines calculation, as set forth in the PSR, is as follows:

| | |
|---|---|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus: Victim Under 16 Years Old (§ 2G2.1(b)(1)(B)) | +2 |

| | |
|---|---:|
| Plus:  Sexual Contact with Victim (§ 2G2.1(b)(2)(A)) | +2 |
| Plus:  Distribution (§ 2G2.1(b)(3)) | +2 |
| Plus:  Misrepresented identity and used a computer to persuade, induce, entice and coerce (§ 2G2.1(b)(6)) | +2 |
| Plus:  Repeat and Dangerous Sex Offender (§ 4B1.5(b)(1))[1] | +5 |
| Less:  Acceptance of Responsibility (§ 3E1.1(a), (b)) | -3 |
| Total: | <u>42</u> |

(PSR ¶¶ 18-30.)

Based upon a total offense level of 42 and Criminal History Category I, the applicable Guidelines range for the defendant is 360 months to life imprisonment. PSR ¶ 73. The government does not object to the Guidelines calculation in the PSR.[2]

III.    Argument

   a. A Substantial Term of Imprisonment is Called For Here Due to the Seriousness of the Offense – Sexual Exploitation of a Minor

The Sentencing Guidelines range in this case is 360 months to life imprisonment. Thus, the appropriate sentence here should be well above the 180 month statutory minimum to reflect the seriousness of the crime to which he pled guilty, the sexual exploitation of other numerous minor victims, and the distribution, receipt and possession of child pornography. To put it plainly, the defendant's conduct in this case is reprehensible. Not only did the defendant manipulate dozens of young boys to create and send to him pornographic images of themselves to satisfy his own twisted desires, the defendant threatened to humiliate his victims by sharing their explicit images with the victims' families and friends unless they complied with his demands to send him more images of themselves.

---

[1] Section 4B1.5 of the Guidelines provides, in relevant part, that a five-level enhancement is appropriate where: (i) the defendant's crime is a covered sex crime; (ii) neither the Career Offender Guideline nor § 4B1.5(a) (covering repeat sex offenders) applies; and (iii) the defendant engaged in a pattern of activity involving prohibited sexual conduct. See U.S.S.G. § 4B1.5(b)(1).

[2] In the plea agreement between the parties, the government estimated the defendant's advisory Guidelines range to be 210 to 262 months' imprisonment. Although the government concedes that Probation's Guidelines calculation is correct, for the reasons stated herein, the government believes that a sentence of 262 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

These were not idle threats. As noted above, the defendant actually carried out these threats against John Doe #5 by sending nude photos of John Doe #5 to John Doe #5's friends. The defendant's actions caused tremendous distress to his young victims at a vulnerable time in their lives. This despicable behavior warrants a substantial sentence.

b. The Advisory Sentencing Guideline Range and the 3553(a) Factors Call for a <u>Sentence Substantially Above the Statutory Minimum</u>

The government recognizes that since <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory rather than statutorily mandated. However, when imposing a sentence, the Court is required to consider the guidelines, but must fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). The United States contends that a below guidelines sentence of 262 month's imprisonment for the exploitation of children, and the distribution, receipt and possession of child pornography in this case is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

i. Congress and the Sentencing Commission Have Recognized That the Sentences and Sentencing Ranges for Offenses Involving the Exploitation <u>Should Be Severe</u>

Child pornography is one of the most insidious traps confronting children in this country and abroad. Both Congress and the United States Supreme Court have found that the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance because of the psychological and physical effects such abuse has on children and their families.

In response to the growing epidemic of child pornography, Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation Children Today Act (the PROTECT Act, Public Law 108-21) in 2003 to enhance the penalties for crimes involving the sexual exploitation of children. Congress also sought to restrict the ability of courts to grant downward departures in cases of sexual exploitation of children. The Commentary to U.S.S.G. § 5K2.0 explains that the standard for a downward departure in child crimes and sexual offenses differs from the standard for other departures under the policy statement in that it includes a requirement . . ."that any mitigating circumstances that form the basis for such a downward departure be affirmatively and specifically identified as a ground for downward departure." Commentary to § 5K2.0, Scope of Policy Statement 4 (B) (I).

As justification for higher sentences in child pornography offenses, Congress stated:

> . . . "The Government has a compelling state interest in protecting children from those who sexually exploit them, including both child molesters and child pornographers." 'The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance,' <u>New York v.</u>

5

> Ferber[,] 458 U.S. 747 (1982), and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain." Osborne v. Ohio, 495 U.S. 103, 110 (1990).
>
> . . . The government thus has a compelling interest in ensuring that the criminal prohibitions against child pornography remain enforceable and effective.  "The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product."  Citing Ferber, 458 U.S. at 760.

The Protect Act, Title V. - Obscenity and Pornography, Sec. 501. Findings.

As stated by Congress, the government has a compelling interest to protect children from sexual predators.  Ferber, 458 U.S. at 757.  A solution in effectively combating the rising tide of the sexual exploitation of children is for legislatures to authorize penalties severe enough to sufficiently deter pornographers from ever beginning the practice of exploiting children for sexual purposes.  "If we are to achieve progress in attacking the growing problem of child pornography and its resulting harms, we must be prepared to adapt our responses to meet this very real threat in a world of 'virtual realities.'"  (Brief of Amicus Curiae on Behalf of the National Center for Missing & Exploited Children at 15, Ashcroft v. The Free Speech Coalition, 122 S. Ct. 1389 (2001) (No. 00-795)).

  ii. Factors Under 18 U.S.C. § 3553(a)

This Court must also consider all of the sentencing considerations set forth in Section 3553(a).  Gall v. United States, 552 U.S. 38, 49-50 (2007).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission (discussed *supra*); and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

  1. Nature and Circumstances of the Offense.

The nature and circumstances of this offense are sickening.  The defendant manipulated vulnerable young boys for his own gratification.  He subjected them to psychological abuse by threatening to humiliate them before their family and friends.  In one case, the defendant actually followed through on his threats.  In summary, the nature and circumstances of this despicable offense are egregious.

2. History and Characteristics of the Defendant

The defendant blames the side effects of medication he was taking for his criminal behavior. PSR ¶¶ 46-49. But as Dr. Theresa DeSantis, a psychologist that conducted a psychosexual evaluation at the request of the defendant's former defense counsel, "This is no different than someone whose [sic] engages in negative behaviors and who is drug addicted blaming their choices and behaviors on the drug itself. This permits them to dismiss any personal responsibility for their judgement, decision making, and self-destructive behaviors." Id. This shows that although the defendant has taken responsibility for his criminal behavior by virtue of his guilty plea, he has not fully come to terms with his culpability. It is therefore not surprising that as a result of her evaluation of the defendant, Dr. Theresa DeSantis concluded that the defendant was at a "moderate to high-risk category for re-offending with another sexual crime." Id. Accordingly, the defendant's history and characteristics demonstrate the need for an extended period of incarceration.

3. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

As the offense of conviction involves the exploitation of children, it is extremely serious, warranting a substantial sentence. Moreover, the defendant's appalling conduct in manipulating and threatening young children cries out for a just punishment, which in this case, would consist of a substantial prison term. Only a substantial period of incarceration will promote the respect for the law that this defendant's criminal behavior warrants.

4. The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant

The sentencing goals of specific deterrence, general deterrence and the protection of the public, in this case, call for a sentence well above the mandatory minimum. To accomplish the goal of general deterrence, the sentence here must give notice that sexually exploiting children has serious consequences. A substantial term of imprisonment will make it clear to society that the consequences of victimizing children will be appropriately severe and that behavior that perpetuates the victimization of children will not be tolerated.

In order to ensure the safety of the public, based upon the entirety of the circumstances in this case, there is no sentence, other than an extended term of imprisonment, that can be imposed which will guarantee the safety of children. As noted above, the defendant is at a moderate to high-risk category for re-offending with another sexual crime. Thus, a sentence well above the mandatory minimum is required to protect the public from further crimes from this defendant.

### 5. The Need to Avoid Unwarranted Sentencing Disparities

The Second Circuit recently affirmed a district court's 420-month sentence for the exploitation of child in United States v. Muzio, 966 F.3d 61, 62 (2d Cir. 2020). In Muzio, a 30-year old defendant posed online as a teenage boy and "exploited at least fourteen underage girls, luring them into sending him a trove of sexually explicit pictures and videos of themselves." The defendant then traded many of these pictures and videos with at least one other person on the internet in exchange for more child pornography. Id. Affirming the district judge's 420-month sentence, the Second Circuit noted that "[c]hild pornography production offenses are extremely serious and ordinarily warrant significantly harsher punishment than possession or even distribution offenses." Id. at 65.

Here, the defendant's criminal conduct is nearly identical to the criminal conduct of the defendant in Muzio, where the Second Circuit found that a 420 months' sentence was not substantively unreasonable. Id. at 64-66. Accordingly, a sentence far above the 180 months mandatory minimum term is required to avoid unwarranted sentencing disparities.

## IV. Conclusion

For the foregoing reasons, the government respectfully submits that a sentence of 262 months' imprisonment is reasonable and appropriate in this case. As set forth above, the seriousness of the underlying offense is evidence on its face and calls for a significant prison sentence far above the mandatory minimum. See 18 U.S.C. § 3553(a)(1). Adequate punishment, deterrence and most importantly, protection of children also call for such a sentence.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Oren Gleich
Oren Gleich
Assistant U.S. Attorney
(631) 715-7889

cc: Clerk of the Court (JS) (by ECF and email)
Counsel of Record (by ECF and email)
U.S. Probation Officer Gregory Giblin (by email)